IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17–148–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| DARIN AKIYOSHI TOCHIHARA, | |
| Defendant. | |

Darin Akiyoshi Tochihara ("Tochihara") is an inmate at Sandstone Federal Correctional Institution. He pleaded guilty to federal robbery and firearm offenses on April 11, 2018, (*see* Doc. 32), and was sentenced to a term of 120 months and 1 day, (*see* Doc. 49 at 2). Tochihara has a projected release date of March 16, 2027. *See* Inmate Locator, www.bop.gov/inmateloc (last visited Apr. 6, 2026). He seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (*See* Doc. 104.) The government opposes. (*See* Docs. 97–98.) For the reasons stated below, Tochihara's motion is denied.

---

[1] This is Tochihara's second motion for compassionate release. He filed his first pro se motion on October 13, 2020. (*See* Docs. 78–79, 84.) That motion was denied. (*See* Docs. 85, 87.) He then filed his second pro se motion on August 13, 2025. (*See* Docs. 95, 95-1, 95-2.) On October 7, 2025, Tochihara filed a motion requesting appointment of counsel. (*See* Doc. 100.) That motion was granted. (*See* Doc. 101.) Counsel was appointed, (*see* Docs. 101–03), and an amended motion and brief was filed on December 8, 2025, (*see* Docs. 104–05).

1

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Tochihara seeks compassionate release based on two asserted extraordinary and compelling circumstances: his family circumstances and the COVID-19 pandemic, to be considered in combination with his substantial post-sentencing rehabilitation. The government agrees Tochihara has exhausted his administrative remedies through the BOP as required by 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. 97 at 3.) After consideration of the entire record, compassionate release is not warranted. Neither Tochihara's asserted family circumstances nor the pandemic-related circumstances, whether viewed independently or in combination with Tochihara's rehabilitation, qualify as an extraordinary and compelling reason under the applicable standard. And even if Tochihara could make that threshold showing, the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against a reduction. Accordingly, Tochihara's motion for compassionate release is denied.

2

## I.    Extraordinary and Compelling Reasons

While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission provides explicit examples of such circumstances. *See* USSG §1B1.13. Relevant here, such circumstances include when the "death or incapacitation of the caregiver" of the defendant's children occurs, USSG §1B1.13(b)(3)(A), or when, "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or [an] ongoing public health emergency," USSG §1B1.13(b)(1)(D). In addition, if the defendant can present "any other circumstance or combination of circumstances that, when considered by themselves or together" are "similar in gravity" to the aforementioned circumstances, they have an extraordinary and compelling reason. USSG §1B1.13(b)(5). Rehabilitation of the inmate "is not, by itself, an extraordinary and compelling reason," USSG §1B1.13(d) (citing 28 U.S.C. § 994(t)), and the inmate bears the burden of establishing their eligibility for release, *United States v. Wright*, 46 F.4th 938, 945, 951 (9th Cir. 2022).

### A.    Family Circumstances

Tochihara's argument under the family circumstances exception concerns two of his children: (1) K.T., age 13, and (2) Landon, age 18. (Doc. 48 at ¶¶ 51,

3

53.) Their mother, Paige Tochihara, is deceased. (*Id.* ¶ 51.) On May 10, 2017, the Montana Department of Public Health and Human Services assumed custody of K.T. and Landon, 15 months before imposition of Tochihara's sentence.[2] (*Id.* ¶¶ 52, 55, 75.) Both of his children were placed in foster care. (*Id.* ¶ 51.) Tochihara's father and stepmother, Rodney and Christine Tochihara, obtained guardianship of K.T. and Landon soon after the imposition of Tochihara's sentence. (Doc. 105 at 5.) Rodney Tochihara is now deceased. (*Id.*) Currently, Christine Tochihara is the sole legal guardian of K.T., and both K.T. and Landon live with Christine in Iowa. (*Id.* at 10.)

Tochihara now asserts that compassionate release should be granted under §1B1.13(b)(3)'s family circumstances exception because Christine Tochihara qualifies as "incapacitat[ed]" under the provision. *See* USSG §1B1.13(b)(3)(A); (Doc. 95-1 at 7–8, 18–22; Doc. 105 at 9–12.) Section 1B1.13(b)(3)(A) provides that an extraordinary and compelling reason can arise due to the "incapacitation of the caregiver" of an inmate's child when the child is a minor or "18 years of age or older and incapable of self-care because of a mental or physical disability or a

---

[2] Before Tochihara's incarceration, he was charged in 2010 with assault (Count I) and child abuse (Count II) in state court resulting from an altercation with his ex-wife while his children were present. (Doc. 48 at ¶ 35.) Tochihara served 18 months of probation and 58 days in jail for assault, and the child abuse charge was dismissed. (*Id.*) Seven years later, Tochihara was convicted of endangering the welfare of a child, resulting from the purchase of alcohol for a person over 18 but under the age of 21. (*Id.* ¶ 37.)

medical condition." Accordingly, Tochihara must successfully make two arguments. For both children, he must demonstrate Christine is incapacitated. With respect to Landon, an adult, Tochihara must also show Landon is "incapable of self-care" due to a mental disability, a physical disability, or a medical condition. Tochihara is unsuccessful on both fronts.

### 1.    Landon

Starting with Landon, the record does not contain any evidence suggesting he has a mental disability, physical disability, or medical condition that renders him incapable of self-care. Tochihara argues that even though Landon is an adult, §1B1.13(b)(3)(A) "would still bear upon whether extraordinary and compelling reasons warrant reduction." (*See* Doc. 105 at 10 n.4.) It does not. Even assuming Christine is incapacitated, Landon *must* be "incapable of self-care" because of a mental or physical disability or medical condition. The present record does not support such a finding.

Tochihara next invokes §1B1.13(b)(5)'s catch-all provision, asserting that "caring for an 18-year-old is 'similar in gravity' to caring for a 17-year-old." (*See* Doc. 105 at 10 n.4.) That argument is unpersuasive. Section 1B1.13(b)(3)(A) is a disjunctive provision and expressly distinguishes between minor children and adult children. For a minor child, the provision requires *only* the death or incapacitation of the caregiver. For an adult child, the United States Sentencing Commission

imposed an additional requirement: the child must be incapable of self-care because of a mental or physical disability or a medical condition. Because Landon is an adult and there is no evidence he is incapable of self-care within the meaning of the Guidelines, Tochihara cannot establish an extraordinary and compelling reason for release as to Landon.

### 2. K.T.

The analysis is closer concerning Tochihara's daughter, K.T., because she is still a minor child. As to her, he needs only to show that her caregiver, Christine Tochihara, has become incapacitated. He has not made that showing on the present record. To be sure, Christine is now 74 years old and struggles with hypertension, osteoporosis, arthritis, depression, AuDHD, reduced energy, difficulty driving at night, and vision and dental issues. (Doc. 95-2 at 50–51, 67–69; Doc. 105 at 9–11.) Her own letter reflects both sincere devotion to K.T. and Landon and significant emotional strain. (Doc. 95-2 at 67–69.) But strain, advancing age, and declining health are not the same as incapacitation. The present record still depicts Christine as a functioning caregiver, not as one who is unable to continue providing care. (Doc. 95-2 at 68–69 ("My health is average for my age in some ways" and "being full-time single parent/grandma is too often exhausting" but "there's no point in moving until these guys are with Darin.").) Christine continues to care for K.T. and Landon and has not indicated she can no

6

longer care for K.T.  To the contrary, the record shows that Christine has continued carrying out that role since Rodney Tochihara's death, and Landon has opined that while he "worr[ies] about her health," Christine "currently has no serious issues," (Doc. 95-2 at 32), and K.T. made no mention of Christine's health, (*see id.* at 39–40).  This falls short of establishing present incapacitation.

The record also does not show that Tochihara is the only available caregiver for K.T.  Christine's circumstances may well require increasing family support, but the current record indicates just that: options.  Counsel indicates Christine is seeking to move in with family who can help care for her and the children, and even projects that by March 2027, Christine, K.T., and Landon may be living with Christine's son and his family in New Hampshire.  (Doc. 95-2 at 60; Doc. 105 at 11.)  That anticipated arrangement undercuts the premise that Christine's present condition has created a complete caregiver vacuum contemplated by §1B1.13(b)(3)(A), and directly negates an argument under §1B1.13(b)(5)'s catch-all provision that there is any circumstance "similar in gravity" to §1B1.13(b)(3)(A) here.  Nor is Christine's future decline dispositive because it does not relieve Tochihara of his burden to establish incapacitation in the present.

Finally, Tochihara argues that his extensive rehabilitation changes the analysis.  It does not.  His prison record appears commendable, (*see* Doc. 95-2 at 5–22), and rehabilitation may be considered in combination with other

circumstances, USSG §1B1.13(d). But rehabilitation "is not, by itself," an extraordinary and compelling reason. *Id.*

## B.    COVID-19

Tochihara separately argues that the COVID-19 pandemic and the harsher conditions of confinement it produced support compassionate release. That argument also fails. Compassionate release requires an extraordinary and compelling reason *particular* to the inmate. *See United States v. Jenkins*, 50 F.4th 1185, 1197, 1203 (D.C. Cir. 2022) ("An extraordinary reason must be most unusual, far from common, and have little or no precedent" and Sentencing Commission factors "turn on post-sentencing changes to a prisoner's individual situation" (internal quotation marks omitted) (emphasis omitted)). General hardship experienced by the prison population during the COVID-19 pandemic is not enough. *See United States v. Stehley*, 2023 WL 8014078, at *7 n.6 (W.D. Pa. Nov. 9, 2023) (rejecting the argument that harsh prison conditions caused by COVID-19 lockdowns and delivery restrictions constituted extraordinary and compelling reasons because such conditions were common to all inmates); *accord* USSG §1B1.13(b)(1)(D)(ii) ("due to *personal* health risk factors and custodial status, *the defendant* is at increased risk of suffering severe medical complications or death" (emphasis added)).

Here, Tochihara does not identify a present medical condition that places

8

him personally at an unusual risk from COVID-19 or otherwise substantially diminishes his ability to provide self-care in prison. *See* USSG §1B1.13(b)(1)(B). In his own submission, he describes having been sick with "the cold more times than before the pandemic," but also concedes he was vaccinated and never tested positive for COVID-19. (Doc. 95-1 at 30–31; Doc. 97 at 9.) The more recent BOP records do not show a materially different picture. Those records reflect, among other things, a negative COVID-19 test, resolved quarantine entries, denials of cardiovascular disease, hypertension, respiratory disease, diabetes, carcinoma/lymphoma, HIV, and hepatitis, and repeated assessments that Tochihara is on regular duty with no medical restrictions. (*See generally* Doc. 98.)

Nor do the pandemic-era conditions of confinement independently constitute an extraordinary and compelling reason for release. Tochihara's assertion that incarceration during the COVID-19 pandemic was more restrictive and burdensome than usual is not in question. Reduced visitation, lockdowns, quarantines, and programming disruptions were real hardships. But those hardships were not unique to Tochihara. As the government correctly notes, the conditions Tochihara describes were experienced by inmates throughout the federal system. (*See* Doc. 97 at 8–9.) Treating those generalized restrictions as extraordinary and compelling in themselves would effectively make every inmate who served time during the COVID-19 pandemic eligible for a sentence reduction.

9

*See United States v. Sullivan*, 2025 WL 2821256, at *4 n.5 (D. Haw. Oct. 2, 2025), *aff'd* 2025 WL 3205928 (9th Cir. Nov. 17, 2025) (citing *United States v. Vela*, 2025 WL 2210928, at *2 (D. Idaho Aug. 2, 2025)) ("harsh conditions of confinement that the defendant endured during the COVID-19 pandemic do not amount to an extraordinary and compelling reason at this time, when vaccines are available for COVID-19, and it is no longer a pandemic," and "[f]inding these conditions to support an extraordinary or compelling circumstance would entitle every prisoner who was incarcerated during the pandemic to a sentence reduction" (internal quotation marks omitted)). Section 3582(c)(1)(A) does not authorize such a sweeping result. The inquiry remains individualized, and Tochihara has not demonstrated that COVID-19 affected him in a way materially different in kind or degree from other inmates.

Accordingly, the COVID-19 pandemic does not establish an extraordinary and compelling reason for compassionate release.

## II.   Section 3553(a) Factors

To determine whether compassionate release is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care.  18 U.S.C. § 3553(a)(1), (2).  Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants.  *See id.* § 3553(a)(4), (6).

Even if Tochihara had established an extraordinary and compelling reason for release, relief is not appropriate.  The nature and circumstances of Tochihara's offense were serious.  Tochihara and his co-defendant robbed a methamphetamine dealer at gunpoint, and Tochihara discharged a firearm into the roof of the victim's residence during the robbery.  (*See* Doc. 48 at ¶¶ 6–15; Doc. 50 at 4.)  The victim estimated the bullet missed him by only a couple of feet.  (*See* Doc. 48 at ¶ 13.)  Tochihara thereafter pleaded guilty to robbery and possession of a firearm in furtherance of a crime of violence.  (*See* Doc. 26 at 2; Doc. 48 at 1.)  This was not impulsive, low-level conduct.  It was a violent armed robbery involving the actual discharge of a firearm.  The seriousness of that conduct continues to weigh against early release.

Tochihara's history and characteristics do not sway that conclusion.  The PSR reflects a significant criminal history, including controlled-substance offenses, assault, and DUI convictions along with a prior child abuse charge.  (Doc. 48 ¶¶ 32–39 (Category IV criminal history score).)  It also reflects repeated failures

under supervision. (*Id.*) The present offense was committed when Tochihara was nearly forty years old, after multiple prior criminal justice interventions, and while he was still struggling with substance abuse and instability. (*Id.* ¶¶ 14, 67.) His history thus shows a continuing need for deterrence, protection of the public, and respect for the law. *See* 18 U.S.C. § 3553(a)(2). Although Tochihara's rehabilitative efforts in prison are noted, (*see* Doc. 95-2 at 5–22), his past conduct demonstrates that substance abuse and prior interventions did not prevent him from escalating to an armed robbery.

The sentence originally imposed also matters. On Count I, the advisory guideline range was 41 to 51 months, with a mandatory consecutive 120-month sentence on Count II. (Doc. 48 ¶¶ 78–80.) Tochihara was ultimately sentenced to one day on Count I and 120 months on Count II. (Doc. 49 at 2.) Thus, the sentence imposed was already the lowest possible custodial term available. Any further reduction would therefore undermine the congressionally mandated sentence imposed on the firearm count. On this record, reducing that sentence would undercut the seriousness of the offense, dilute just punishment, and weaken both specific and general deterrence.

The Court has fully considered Tochihara's post-sentencing conduct, and it is favorable in many respects. BOP records reflect extensive programming, no incident reports, regular duty with no medical restrictions, excellent work

evaluations, and a low PATTERN recidivism score.  (Doc. 95-2 at 5–22; Doc. 98-1 at 1–4.)  Those facts demonstrate meaningful effort and improvement.  But 18 U.S.C. § 3553(a) requires courts to balance rehabilitation against the full context of the offense, the defendant's criminal history, the sentence already imposed, and the need to protect the public and promote respect for the law.  Here, that balance weighs against release.  The sentence originally imposed remains sufficient but not greater than necessary to satisfy the purposes of sentencing.  Compassionate release is unwarranted.

### CONCLUSION

Accordingly, IT IS ORDERED that Tochihara's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 95, 104) is DENIED.

DATED this 22nd day of April, 2026.

Susan P. Watters, District Judge
United States District Court

13